FILED
2007 May-29 PM 02:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

DENNIS CLACK,

Plaintiff,

v.

TOWN OF ROGERSVILLE, ALABAMA; LEE SMITH; TY BARRETT; and HAROLD CHANDLER,

Defendants.

Case No.: 3:06-CV-678-IPJ

**MEMORANDUM OPINION**

Pending before the court is the defendants' motion for summary judgment (doc. 13) which was filed with a supporting brief (doc. 15) and evidentiary materials (doc. 14). The plaintiff filed a response in opposition to the motion (doc. 20) and evidentiary materials (doc. 18) to which the defendants filed a reply (doc. 21).

**PROCEDURAL AND FACTUAL BACKGROUND**

This case arises from plaintiff Dennis Clack's arrest in the Town of Rogersville ("Rogersville") for public intoxication and resisting arrest. Clack sued Rogersville; Lee Smith, the Rogersville police officer that arrested Clack; Ty Barrett, the Rogersville police chief; and Harold Chandler, the Mayor of Rogersville. Clack sued under 42 U.S.C. § 1983 alleging that he was falsely arrested in violation of the Fourth and Fourteenth Amendments.

On April 7, 2004, at around 4:00 p.m., Clayton Overacre and Clack met at Clack's house, which is located near Rogersville, Alabama. Clack Dep. at 6-7;

Overacre Dep. at 14. Clack and Overacre then left Clack's house between 6:00 p.m. and 6:30 p.m., and they went to eat dinner at the La Hacienda Restaurant in Florence, Alabama. Overacre Dep. at 14-15. Clack drank a margarita with his dinner. Clack Dep. at 40-41.

Clack and Overacre left the restaurant about one hour later. Overacre Dep. at 16. When they left the restaurant, Overacre drove Clack's truck because Clack had been drinking, and they went to Dandy's Package Store. *Id.* at 17. They purchased 30 bottles of beer and a bottle of whiskey. Overacre Dep. at 17; Clack Dep. at 45-46. Overacre and Clack then left the package store and drove to Overacre's home in Killen, Alabama so that Overacre could pick up some things at his house. Overacre Dep. at 17-18.

At around 10:00 p.m., Clack and Overacre went to the house of Patricia Gail Lovelace who lives near Overacre. Clack Dep. at 44; Lovelace Dep. at 16. Clack and Overacre decided to stop by Lovelace's house to collect on a bad check that Lovelace's husband had written to Clack. Clack Dep. at 44, 47. Lovelace and her 12-year-old daughter were at home on the evening of April 7, 2004, and by 10:00 p.m. Lovelace and her daughter had gone to bed. Lovelace Dep. at 8-9. Lovelace's husband was not at home because he was in the hospital. *Id.* at 34-35. At around 10:00 p.m., Lovelace's daughter woke her up because someone was knocking on the front door. *Id*. at 9. Lovelace answered the door and saw two gentlemen, Clack and Overacre, standing at the front door. *Id.* Lovelace did not know Clack and Overacre. *Id*. at 9. She testified as to the exchange that took place between she and Clack, and

Clack does not dispute that the following exchange took place: Clack told Lovelace that he needed to see her husband, David Lovelace; when Lovelace explained that her husband was in the hospital, Clack told her she was a "damn liar"; when Lovelace told Clack again that her husband was in the hospital, Clack told Lovelace that she was "nothing but white trash. A something bitch." *Id.* at 10. Lovelace then told her daughter to call 9-1-1, and she stepped out onto the front porch to go to her mother's house, which was next door to Lovelace's house. *Id.* at 13. When Overacre and Clack started to leave Lovelace's property, Lovelace told them that they were going to stay until the police arrived. *Id.* Clack and Overacre got into Clack's truck and Lovelace reached into the cab of the truck in an attempt to take the keys. *Id*. at 13-14. Lovelace "scuffled" with Overacre while trying to get the keys until Clack reached over and grabbed Lovelace's arm and shoved her out of the truck. *Id*. Clack and Overacre then left Lovelace's house. *Id.* Two Lauderdale County deputies responded to the 9-1-1 call and Lovelace told them what had occurred. *Id*. at 15. The deputies then put out a BOLO or "Be on the Lookout" for Clack and Overacre. Smith Dep. at 33-35.

Rogersville police officer Lee Smith was patrolling on U.S. 72 east in downtown Rogersville when he picked up the BOLO advising that he should be on the lookout for two white males in a red Ford Ranger that had been involved in a fight in the jurisdiction of Killen and that the driver was believed to be driving under the influence of alcohol. Smith Dep. at 35. The BOLO also requested that if the two men were located, that they be held and that Lauderdale County officials be notified. *Id.*

Overacre and Clack drove past Smith, and Smith recognized the vehicle from the BOLO description. *Id*. at 41-42. Overacre was driving the truck and Clack was in the passenger's seat. *Id*. at 40. Smith turned his car around to go after the vehicle. *Id.* at 41-42. Smith observed that the vehicle appeared to be going at a high rate of speed, and he observed the driver made a wide turn off of U.S. 72 onto County Road 572, which is east of Rogersville. *Id.* at 41-43. Smith continued to follow Clack and Overacre, and he observed the truck cross the center line in the road. *Id.* at 52. At that time, Smith turned on his blue lights and siren. *Id*. at 53-54. When Smith turn on his lights and siren, Overacre, who was driving, did not stop the car immediately. Overacre Dep. at 28; Clack Dep. at 56. Clack, who was riding in the passenger's seat, told Overacre not to stop the car for the police officer. Clack Dep. at 56-57. Clack and Overacre decided to keep driving to Clack's house, which was seven tenths of a mile away. Overacre Dep. at 28. Overacre eventually pulled over into Clack's driveway, and the rear of the vehicle was sticking out in the road. Clack Dep. at 61-62.

Clack got out of the truck and walked towards the police car. Clack Dep. at 62. Clack then walked out into the public road and Officer Smith told Clack to get back in his vehicle two or three times. Smith Dep. at 84. Clack refused to get back in the vehicle and walked on the road to the police car. *Id*. Smith told Clack to put both hands on the car and Clack refused to do so. Clack Dep. at 63-64. In the meantime, Overacre had driven the truck down into the driveway to Clack's house, and he entered Clack's house. Overacre Dep. at 31-33. When Smith asked Clack why the

driver of the truck did not stop, Clack explained to Smith that he told the driver not to stop and to continue "on to the house." Pl's Ex. 1, DVD video of arrest at 22:31:10 - 22:31:20. Clack disobeyed all of Smith's commands and stated that the "whole thing was bogus." Clack Dep. at 63-64. Eventually, Clack turned around and walked into the house. *Id.*

Smith did not follow Overacre or Clack into the house, but called for backup. Smith Dep. at 78-79. The other officers that arrived included Officer Rodney Rippey from Killen, Deputy Thomas McCluskey from the Lauderdale County Sheriff's Department, and Killen Reserve Officers Wesley Lee Tidwell and Roger Whitehead. Smith Dep. at 109-110. Smith called Chief Barrett who told Smith to call the district attorney in regards to whether he could go in the house. *Id*. at 115-119. Smith then contacted attorney Billy Jackson, from the district attorney's office. *Id.* at 118-120. Smith told Jackson that Clack was drunk on a public road, and Jackson told Smith to arrest Clack, but not go in the house after Overacre. *Id*. at 119. In the meantime Clack came out of the house and he was drinking a beer. *Id*. at 131. Smith also observed Clack slip into a ditch. *Id.* at 89-90. With backup there, Smith arrested Clack for public intoxication. Clack Dep. at 74. Clack responded to Smith by saying: "That's impossible. This is private property ... Bud, you can't arrest me for public intoxication. This is not public and I'm not intoxicated ... I'm not coming with you ... You can't arrest me for public intoxication at my residence. This is my property. I own it. It's not public." *Id.* at 75-76. Clack then started walking down the driveway towards the house. *Id.* at 76. The officers advised Clack that if he did not

come with the officers, he would also be arrested for resisting arrest. *Id*. Clack continued to walk away until Rippey took Clack to the ground. *Id.* at 77. Clack was handcuffed, arrested for public intoxication and resisting arrest, and taken to the Rogersville Police Department. *Id*. at 77-79.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In making this determination, the court shall review the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant. *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004). In making a qualified immunity determination, the court is similarly obliged to review the facts in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).

## ANALYSIS

### A. Qualified Immunity for Smith

The defendants argue that summary judgment is appropriate because Smith is entitled to qualified immunity. Because the parties agree that Smith was acting within his discretionary authority when he arrested Clack, the burden shifts to Clack to show that Smith is not entitled to qualified immunity. Overcoming an official's qualified immunity defense requires two steps: (1) Clack must establish that Smith's conduct violated a constitutional right and (2) Clack must show that the constitutional

right is clearly established. *Vinyard v. Wilson*, 311 F.3d 1304, 1346 (11th Cir. 2002).

With respect to claims of false arrest, the Eleventh Circuit recently explained the standard to be applied in determining whether a constitutional violation has occurred:

> Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." In Fourth Amendment terminology, an arrest is a seizure of the person, *California v. Hodari D.*, 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), and the "reasonableness" of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir.2002) (per curiam) (quotation marks omitted). This probable cause standard is practical and non-technical, applied in a specific factual context and evaluated using the totality of the circumstances. See *Maryland v. Pringle*, 540 U.S. 366, 370, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).
>
> While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity. We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause. As the Supreme Court observed in *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials ... should not be held personally liable." Thus, even if we determine that the officer did not in fact have probable cause, we apply the standard of "arguable probable cause," that is, whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] *could have believed* that probable cause existed to arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.2002) (emphasis added, quotation marks omitted). Indeed, this is "all that is required for qualified immunity to be applicable to an arresting officer." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir.2001) (per curiam). This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who *unreasonably* conclude that probable cause exists.

*Skop v. City of Atlanta*, No. 06-14294, 2007 WL 1288012, at *5 (11th Cir. May 3, 2007).

The determination whether an arresting officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime, *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004), and the operative fact pattern.

**1. Public Intoxication**

"A person commits the crime of public intoxication if he appears in a public place under the influence of alcohol, narcotics or other drug to the degree that he endangers himself or another person or property, or by boisterous and offensive conduct annoys another person in his vicinity." Ala. Code § 13A-11-10. Clack argues that Smith did not have arguable probable cause to believe that he was intoxicated at the time of the arrest and therefore, Smith should not be entitled to qualified immunity.

Smith testified that he believed Clack to be intoxicated based upon a number of factors. Smith Dep. at 88-102. Smith testified that Clack's demeanor was belligerent, and the evidence shows that Clack refused to obey Smith's commands. *Id.* at 101. Specifically, it is undisputed that Clack disobeyed Smith's commands to get back into his truck and to put both hands on the hood of the police vehicle. In addition, Clack failed to follow Smith's commands by walking away from the police car and into his house. Smith also testified that he smelled a strong odor of alcohol on Clack, that Clack had slurred speech and bloodshot eyes, and that Clack was unsteady and he slipped into a ditch. *Id.* at 88-102. Further, Clack decided to drink

more alcohol when he entered his house even though police officers were just outside of his house, and Clack came out of the house drinking a beer. Clack admitted that he drank a margarita earlier in the evening, and he admitted that he was not driving because he was drinking.

The other officers that responded to the scene confirmed Smith's observations. McClusky testified that he believed that alcohol was involved, that Clack was being stubborn, and that Clack was not being reasonable. McClusky Dep. at 45-48. Rippey testified that, before Smith handcuffed Clack, Smith had to tell Clack five or six times to put his hands behind his back, and that Clack ignored that instruction and walked into the garage area of his house and threw a beer away. Rippey Dep. at 10. Rippey also testified that Clack was wobbling and waving back and forth as he stood, that he refused to obey the Smith's orders, he was belligerent, and that he had the smell of alcohol on his breath. Rippey Dep. at 18-21. Tidwell testified that he did not have an opinion with respect to whether Clack was intoxicated and that he was not close enough to Clack to determine whether his speech was slurred. Tidwell Dep. at 9-10. However, Tidwell observed that Clack was very belligerent and that he did not obey Smith's commands. *Id.* at 9. Whitehead testified that when he received the BOLO over the radio, he heard on the radio that Clack was drunk and that a possible assault had occurred at the Lovelace residence. Whitehead Dep. at 19, 25-26. Whitehead also testified that Clack was belligerent and that he saw him drinking a beer. *Id.* at 34-35. Further, Whitehead testified that Clack pulled away when Smith tried to handcuff him. *Id.* at 42. The video of the arrest also confirms that Clack repeatedly

failed to obey Smith's instructions or commands. Pl's Ex. 1, DVD video of arrest.

Clack contends that there is a genuine issue of material fact with regard to whether Smith had arguable probable cause to arrest Clack because Clack testified that he only had one margarita to drink. However, there is no evidence to dispute that Clack did not smell of alcohol when Smith encountered Clack in front of his house. In addition, Clack admits that he did not drive that evening because he had been drinking. Clack also contends that the video of his arrest creates a genuine issue of material fact with regard to whether Smith had probable cause to arrest him for public intoxication. Specifically, Clack argues the video shows that he was not unsteady on his feet and that his speech was not slurred. However, Clack admits that he slipped into a ditch before he was arrested, but this was not recorded on the video of his arrest. In addition, although the video reveals Clack's speech was comprehensible, the court finds that this evidence alone is not sufficient to create a genuine issue of material fact with regard to whether Smith had arguable probable cause to arrest Clack for public intoxication. Viewing the evidence in the light most favorable to the plaintiff, the court finds that there is ample evidence to demonstrate that reasonable officers in the same circumstances and possessing the same knowledge as Smith could have believed that probable cause existed to arrest Clack for public intoxication. Therefore, the court finds that, with respect to Clack's claim that he was falsely arrested for public intoxication, Smith is entitled to qualified immunity.

**2. Resisting Arrest**

"A person commits the crime of resisting arrest if he intentionally prevents or

attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person." Ala. Code § 13A-10-41. Clack argues that Smith did not have arguable probable cause to arrest him for resisting arrest because an essential element of the crime of resisting arrest is that Smith have probable cause to arrest Clack for public intoxication, the underlying offense. The undisputed evidence shows that Clack repeatedly resisted Smith's attempts to arrest him. Because the court finds that Smith had arguable probable cause to arrest Clack for public intoxication and because Clack resisted Smith's attempts to arrest him, Smith is also entitled to qualified immunity with respect to Clack's claim that he was falsely arrested for resisting arrest.

B. Smith's Claims Against Rogersville, Barrett and Chandler

Because the court finds that Smith had arguable probable cause to arrest Clack for public intoxication and resisting arrest, there can be no constitutional violation. Therefore, with regard to Clack's claims against Rogersville, Barrett, and Chandler, the court also finds that summary judgment is due to be granted in their favor.

## CONCLUSION

Having considered the foregoing, the court finds that the plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial. It is therefore **ORDERED** that summary judgment shall be **GRANTED** in favor of all defendants, and the plaintiff's claims against the defendants shall be **DISMISSED WITH PREJUDICE**.

**DONE** and **ORDERED** this the 29th day of May 2007.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE